**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

S.M.A. MEDICAL, INC., d/b/a SMA      CIVIL ACTION
SPECIALTY MEDICAL LAB,
           Plaintiff,

       v.
                        NO. 19-6038

UNITEDHEALTH GROUP, INC.,
UNITEDHEALTHCARE SERVICES,
INC., UNITEDHEALTHCARE SERVICE,
LLC, UNITEDHEALTHCARE INSURANCE
CO., UNITEDHEALTHCARE OF
PENNSYLVANIA, INC.,
OPTUMINSIGHT, INC., and UMR,
INC.,
           Defendants.


**MEMORANDUM AND ORDER**


**JOYNER, J.**                           **April  20 , 2020**


     This case has been brought before the Court on Motion of

the Plaintiff, S.M.A. Medical, Inc. ("SMA") for Remand to the

Court of Common Pleas of Bucks County, Pennsylvania pursuant to

28 U.S.C. Section 1447(c) for lack of subject matter

jurisdiction.  For the reasons outlined in the paragraphs which

follow, the motion shall be granted.

## Statement of Facts

Plaintiff SMA is a nationwide clinical reference, third party laboratory that performs blood, cytopathology, toxicology and other testing on samples taken from patients at doctors' offices and/or other medical facilities. None of the specimens on which Plaintiff runs tests are collected at any of its facilities nor does Plaintiff play any role in determining what specimens should be collected or what tests should be performed – all of those decisions are made by the individual patient's ordering physician or medical provider.  SMA has no direct contact or communication with the patients whose specimens it tests; it simply performs the tests requested and transmits the results back to the medical provider who sought testing and provided the sample for examination.

Included among the patients whose specimens SMA tests, are insureds under health care plans provided or administered by Defendant United Healthcare.[1] Although Plaintiff is "in-network" and has a contract with only one United Healthcare entity -- UnitedHealthcare of Pennsylvania, Inc., a Medicaid managed care plan, it nevertheless provides services to patients who are

---

[1] As alleged in Plaintiff's Complaint, "United Health Group, Inc. is a fully-integrated company that through its wholly owned subsidiaries, is in the business of both underwriting and administering health insurance plans." (Pl's Compl., paragraph 4).  Thus, although numerous United Health Group subsidiaries/entities are named as defendants in this action, for the sake of simplicity, we shall refer to all of the defendants collectively as "the Defendant" or "United."

insured under other United Healthcare plans, albeit on an "out-of-network" basis.  "Prior to the end of September 2015, SMA routinely provided laboratory services ordered by medical professionals for United's members as an out of network provider and received timely and appropriate reimbursement."  (Pl's Compl., paragraph 39).  A short time later, it is alleged that Defendant stopped making any payments whatsoever to Plaintiff for the testing it had performed for Defendant's insureds. (Compl., paragraphs 41, 42).  Plaintiff alleges that "to this day," Defendant has never informed it that it required prior authorizations for the testing services being performed, that it did not want Plaintiff to perform testing on Defendants' members/insureds or that it would never pay Plaintiff for the services that Plaintiff was performing for Defendant's members. (Compl., paragraphs 43-45).  Instead, Defendant has either denied outright Plaintiff's claims for services as not being "medically necessary" or pended/suspended claims and asked for additional information.  Plaintiff further avers that despite having knowledge that Plaintiff does not possess the medical records for each patient whose specimens it tests, Defendant has demanded that Plaintiff produce each patient's medical records, and often demands the production of "the daily schedule, nursing and physician notes, treatment plan and intake/discharge summaries," among other things. (Compl., paragraphs 61-64).

3

According to Plaintiff, it has endeavored to comply with Defendant's demands by requesting and, if and when received from the ordering medical providers, submitting the materials demanded.  Nevertheless, United has further stalled payment giving as the reasons therefor that it hasn't received the requested materials, that it needs still additional documentation or that it cannot locate the documents sent. Although Defendant did eventually pay some 20% of Plaintiff's outstanding claims, beginning in 2018, it began to claim that it had "overpaid" Plaintiff on many of these claims.  Thereafter, "[o]n or about October 28, 2019, United began recouping or offsetting what it claimed to be amounts owed against current payments."  (Compl., paragraphs 97-102).

Plaintiff alleges that it has not overpaid United and that United has absolutely no right, contractual or otherwise, to recoupment or set-off of the $1.9 million to which United claims to be entitled.  To the contrary, Plaintiff alleges that Defendant owes it "tens of millions of dollars" in unpaid claims. (Compl., paragraphs 98, 99, 101, 104-105).  On or about November 19, 2019, SMA commenced this suit against Defendants in the Court of Common Pleas of Bucks County, Pennsylvania for all of the outstanding payments due to it.  In its Complaint, Plaintiff raised only state common law causes of action for unjust enrichment, quantum meruit, promissory estoppel,

4

negligent misrepresentation, breach of contract and for violation of lookback periods against Defendant.

On December 20, 2019, United removed the action to this Court pursuant to 28 U.S.C. Section 1446 advancing as the reason therefor that this Court has original jurisdiction over the matter since it presents a federal question under the Employee Retirement Income Security Act of 1974, *as amended,* 29 U.S.C. Section 1001, *et. seq.* ("ERISA"). In so doing, Defendant contends that the claims raised in this case are completely preempted under ERISA Section 502, 29 U.S.C. §1132.  By the motion now before us, Plaintiff seeks to have this action remanded to state court on the grounds that because it could not have brought its claims under Section 502(a) of ERISA, this Court does not possess subject matter jurisdiction and removal was therefore improper.

## Standards for Removal and Remand

The general rule governing removal of actions from state to federal court is set forth in 28 U.S.C. §1441(a).  That Section reads:

> **(a)  Generally.**  Except as otherwise provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Federal courts are courts of limited jurisdiction and thus "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." <u>Kokkonen v. Guardian Life Insurance Co. of American</u>, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed.2d 391 (1994); <u>A.S. ex rel. Miller v. SmithKline Beecham Corp.</u>, 769 F.3d 204, 208 (3d Cir. 2014)(quoting <u>Batoff v. State Farm Insurance Co.</u>, 977 F.2d 848, 851 (3d Cir. 1992) and <u>Steel Valley Auth. v. Union Switch & Signal Div.</u>, 809 F.2d 1006, 1010 (3d Cir. 1987)).   "The removing party …carries a heavy burden of showing that at all stages of the litigation the case is properly before the federal court." <u>Manning v. Merrill, Lynch, Pierce, Fenner & Smith</u>, 772 F.3d 158, 162 (3d Cir. 2014); <u>Brown v. JEVIC</u>, 575 F.3d 322, 326 (3d Cir. 2009).   "A state claim may be removed to federal court in only two circumstances: when Congress expressly so provides … or when a federal statute wholly displaces the state-law cause of action through complete pre-emption."    <u>Beneficial National Bank v. Anderson</u>, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed.2d 1 (2003).

     A motion to remand, on the other hand, "is governed by 28 U.S.C. §1447(c) which provides that removed cases shall be remanded 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction." <u>Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield</u>, Civ. A. No. 16-1649, 2017 U.S. Dist. LEXIS 26671, 2017

WL 751851 (D.N.J. Feb. 27, 2017)(quoting <u>Steel Valley Authority</u>,
<u>supra</u>, 809 F.2d at 1010).  When ruling on whether a motion to
remand to the state court from which it was removed should be
granted, the district court must focus on the plaintiff's
complaint and the record in the state court at the time the
petition for removal was filed, assuming as true all factual
allegations in the complaint. <u>Hartman v. Cadmus-Cenveo Co.,</u> Civ.
A. No. 13-7494, 2014 U.S. Dist. Lexis 131517, *8, 2014 WL
4662499, *8 (E.D. Pa. Sept. 19, 2014)(citing <u>Steel Valley</u>
<u>Authority</u>, <u>supra</u>, and <u>Westmoreland Hospital Association v. Blue</u>
<u>Cross of Western Pennsylvania</u>, 609 F.2d 119, 124 (3d Cir.
1979)); <u>Smith v. Northland Group., Inc.</u>, Civ. A. No. 3:13-CV-
249, 2013 U.S. Dist. LEXIS 58484, *3, 2013 WL 17766775 (M.D.Pa.
April 24, 2013).

     In removing this case from the Bucks County Court of Common
Pleas to this Court, Defendant asserts that we have subject
matter jurisdiction given that Plaintiff's claims present
federal questions under 28 U.S.C. Section 1331. It is
Plaintiff's position that inasmuch as its complaint states
claims under Pennsylvania state law alone, this case must be
remanded to Bucks County.

## **Discussion**

     Generally speaking, 28 U.S.C. Section 1331 has been
interpreted to require the plaintiff to demonstrate the federal

nature of the claims on the face of the complaint.  North Jersey Center for Surgery, P.A. v. Horizon Blue Cross Blue Shield of New Jersey, Inc., Civ. A. No. 07-4812, 2008 U.S. Dist. LEXIS 71231, *4 (D. N.J. Sept. 18, 2008).  This is otherwise known as the "well-pleaded complaint rule" and it has been said to be "the basic principle marking the boundaries of federal question jurisdiction of the federal district courts."  Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 1546, 95 L. Ed.2d 55 (1987)(citing Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 9-12, 103 S. Ct. 2841, 77 L. Ed.2d 420 (1983)).  "Federal pre-emption is ordinarily a defense to a plaintiff's suit and, as such, does not appear on the face of a well-pleaded complaint."  Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 398 (3d Cir. 2004) (citing Beneficial National Bank v. Anderson, 539 U.S. at 6 and Franchise Tax Board, 463 U.S. at 12).  Consequently, it does not satisfy the well-pleaded complaint rule.  North Jersey Surgery Center, 2008 U.S. Dist. Lexis 71231 at *5 (citing Metropolitan Life v. Taylor, 481 U.S. at 63.

Despite this general principle, "[t]here exists a 'narrow exception' to the well-pleaded complaint rule for instances where Congress 'has expressed its intent to completely pre-empt a particular area of law such that any claim that falls within

this area is necessarily federal in character.'"  New Jersey

Carpenters Funds v. Tishman Construction Corporation of New

Jersey, 760 F.3d 297, 302 (3d Cir. 2014) (quoting In re U.S.

Healthcare, Inc., 193 F.3d 151, 160 (3d Cir. 1999)).  To be

sure, "[w]hile other types of preemption operate only as federal

defenses to state law claims, complete preemption 'operates to

confer original federal subject matter jurisdiction

notwithstanding the absence of a federal cause of action on the

face of the complaint.'"  Id, (quoting id.). Stated otherwise,

"[u]nlike the federal law defense of preemption, complete

preemption is a jurisdictional principle, wherein Congress's

extra-special treatment of a particular area of law implicitly

transforms state law claims in that genre into a federal cause

of action" and thus "complete preemption permits removal even

where no federal question appears on the face of the complaint."

North Jersey Surgery Center, supra, at *6 (citing Lazorko v.

Penn. Hospital, 237 F.3d 242, 248 (3d Cir. 2000) and Metro. Life

Insurance, 481 U.S. at 63-64).  In this manner, "[a] complaint

purporting to rest on state law can be recharacterized as one

'arising under' federal law if the law governing the complaint

is exclusively federal." Vaden v. Discover Bank, 556 U.S. 49,

61, 129 S. Ct. 1262, 1266, 173 L. Ed.2d 206 (2009).

ERISA represents one such area of law. "Congress enacted ERISA

to protect the interests of participants in employee benefit plans

and their beneficiaries by setting out substantive regulatory requirements for employee benefit plans and to provide for appropriate remedies, sanctions, and ready access to the Federal Courts." Aetna Health Inc. v. Davila, 542 U.S. 200, 208, 124 S. Ct. 2488, 2495, 159 L. Ed.2d 312 (2004) (quoting 29 U.S.C. Section 1001(b)).  Inasmuch as the purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans, ERISA includes expansive pre-emption provisions which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern."  Id,(quoting Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S. Ct. 1895, 68 L. Ed.2d 402 (1981)).

For this reason, the Supreme Court has found that "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Id, 542 U.S. at 209, 124 S. Ct. at 2495; Metropolitan Life v. Taylor, 481 U.S. at 62, 107 S. Ct. at 1546 (both citing Pilot Life Insurance Co. Dedeaux, 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed.2d 39 (1987)).  And the Third Circuit has further clarified "that a claim is completely preempted and thus removable under ERISA Section 502(a) only if: (1) the plaintiff could have brought the claim under Section 502(a); and (2) no other independent legal duty supports the plaintiff's claim." Tishman, 760 F.3d at 303 (citing Aetna Health v. Davila, 542 U.S. at 210

10

and Pascack Valley, 388 F.3d at 400). "Because the test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied." Id.

As is clear then, not all pre-emption is the same. Indeed, pre-emption under Section 514(a) of ERISA, 29 U.S.C. §1144(a) differs from *complete* pre-emption under ERISA Section 502(a). As the Third Circuit succinctly stated in Pascack Valley:

> Pre-emption under §514(a) of ERISA, 29 U.S.C. §1144(a), must be distinguished from *complete* pre-emption under §502(a) of ERISA, 29 U.S.C. §1132(a). Only the latter [Section 502(a)] permits removal of what would otherwise be a state law claim under the well-pleaded complaint rule. Under § 514(a), ERISA supersedes state laws that "relate to" an ERISA plan. 29 U.S.C. §1144(a). Unlike the scope of §502(a), which is jurisdictional and creates a basis for removal to federal court, §514(a) merely governs the law that will apply to state law claims, regardless of whether the case is brought in state or federal court. … Section 514(a), therefore does not permit removal of an otherwise well-pleaded complaint asserting only state law claims. …

388 F.3d at 398, fn. 4 (*citations omitted*).

To succeed in keeping this matter in this Court, it is therefore incumbent upon Defendant United to demonstrate that Plaintiff's state law claims fall entirely within the ambit of ERISA Section 502(a). In the event and to the extent that the claims arise under Section 514, pre-emption is a defense and federal jurisdiction is not exclusive. We first examine the language of Section 502(a) which reads as follows in relevant part:

§1132.  Civil enforcement

**(a)   Persons empowered to bring a civil action.**  A civil action may be brought –

    **(1)**  by a participant or beneficiary –

        **(A)**  for the relief provided for in subsection (c) of this section, or

        **(B)**  to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan;

…

A "participant" means "any employee or former employee of an employer or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."  29 U.S.C.  §1002(7).  A "beneficiary" in turn, "means a person designated by a participant or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. §1002(8).

Instantly, it is clear that insofar as Plaintiff is a medical testing laboratory providing services to Defendant's insureds, among others, it is neither a "participant" nor a "beneficiary" within the definitions outlined above.  As a result, Plaintiff would not have standing to pursue relief from Defendant under Section 502(a).  This is not necessarily fatal to removal, however.

To be sure, health care providers may obtain standing to sue by assignment from a plan participant. CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 176, n. 10 (3d Cir. 2014). In fact, it is now a "matter of federal common law that when a patient assigns payment of insurance benefits to a healthcare provider that provider gains standing to sue under ERISA Section 502(a)." North Jersey Brain & Spine Center v. Aetna, Inc., 801 F.3d 369, 372 (3d Cir. 2015). And, "an assignment of the right to payment logically entails the right to sue for non-payment." Id. It naturally follows, therefore, that if it can be shown that Plaintiff is endeavoring to sue Defendant for non-payment under benefits assignments from Defendant's "beneficiaries" or "participants," then it has standing under Section 502 and removal to this Court was proper.

Again though, the burden of proving that Plaintiff's claims are governed by ERISA falls upon Defendant since it sought removal. See, e.g., Community Medical Center v. Local 464A UFCW Welfare Reimbursement Plan, No. 04-1613, 143 Fed. Appx. 433, 436, 2005 U.S. App. LEXIS 15713 *7 (3d Cir. July 29, 2005); DeFelice v. Aetna U.S. Healthcare, 346 F.3d 442, 452 (3d Cir. 2003). Likewise, the burden of establishing the existence of an assignment rests upon the removing party. Pascack Valley, 388 F.3d at 401 (citing Hobbs v. Blue Cross Blue Shield of Ala., 276 F.3d 1236, 1242 (11th Cir. 2001)).

Here, Plaintiff's Complaint avers that "upon information and belief, most of the medical professionals who have sent the specimens at issue in this litigation to SMA for testing are in-network or participating providers with United," but Plaintiff "is not privy to the specific details of any contractual arrangements between the ordering participating medical providers and any health insurance company." (Pl's Comp., ¶s 22, 23). However, despite not being privy to this information, the Complaint further asserts that "United, directly and through third parties, maintains a database of member eligibility" to which it submits data that reveals whether or not a United plan member is or is not entitled to coverage for out of network services and that prior to providing the services at issue in this case, SMA used this database to confirm "each patient/member's coverage with United and his/her eligibility for the out of network services SMA was being asked to provide." (Pl's Compl., ¶s 24-26). Thus, according to the Complaint, there is no question but that Defendant's insurance policies provide coverage for the services which Plaintiff provided, and there are four exhibits which are referenced and annexed thereto. (Complaint Exhibits "1" – "4"), These exhibits list more than 75,800 claims which Plaintiff filed to recover for services which it purportedly provided to some 31,300 patients insured by United, together with patient/member identification numbers and United plan group and/or policy

14

numbers.  (Compl., ¶s 27-32).  Defendant ultimately paid some of these claims, denied some and "pended/suspended" the remainder. (Compl., ¶s 40-43, 47-53, 75-82, 86-87, 91-94).

Defendant in turn, attached to its Notice of Removal not only the Plaintiff's Complaint but also an Affidavit from one Han Nguyen, an authorized United Declarant[2], averring that the patients referenced in Plaintiff's complaint and exhibits thereto were "members of health benefit plans for which United served as claims administrator and for which claims are funded by the employers listed in the plan," and that "[m]any of the policy numbers contained in the Complaint refer to United fully insured plans."  (Nguyen Decl., ¶s 4-5).[3]  Further, also attached to Nguyen's declaration are copies of Health Insurance Claim Forms for 5 of the patients listed on SMA's exhibits which appear to verify that these patients are indeed insured under employer-sponsored health benefit plans and Claim Submission Forms for at least two of the patients identified on SMA's

---

[2] It is unclear what position Mr. Nguyen holds with United or under what authority he is authorized to make the Declaration.  The Court, however, accepts as true the contents of the Declaration despite the absence of this information.

[3] Among the plans to which Nguyen referred were the 2019 Danaher Corporation Gold Plan, the 2019 Walgreen Health and Welfare Plan, the 2017 Caterpillar, Inc. Plan and the 2017 Berkowitz, Pollack, Brant Advisors & Accountants Plan and the 2017 Century Fire Sprinklers, Inc. group policy.  See, e.g., Pension Benefit Guaranty Corp. v. White Consolidated Industries, 998 F.2d 1192, 1196 (3d Cir. 1993)(holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

documents who were members of Medicare Advantage Plans issued by United.  Boxes 12, 13 and 27 reflect the following notations:

    12. Y/PROVIDER HAS SIGNED RELEASE ON FILE FOR CLAIM ADJUDI"

    13. Y/BENEFITS ASSIGNED TO PROVIDER/PAY PROVIDER

    27.  A/ASSIGNED

    Additionally, attached as Exhibits "A" and "B" to its Response in Opposition to the Motion to Remand, Defendant appended sample copies of the Toxicology Requisition and Specialty Laboratory testing intake forms which SMA presumably requires ordering physicians and patients to fill out at or about the time they present for specimen collection and/or testing.  In addition to the patient's name, address, telephone number and other identifiers, the form requests the name, address, etc. of the patient's insurance company, policy, group number, and member identification information and also includes the following language under the headings "Patient consent and authorization" and "Patient acknowledgement and authorization":

**PATIENT CONSENT AND AUTHORIZATION**

I supplied accurate and true information with this form.
If I supplied insurance information, I authorize payment of
my insurance benefits directly to SMA.  I authorize SMA to
be my designated representative and to appeal any denial of
health benefits.  I understand SMA may be out of network
with my plan, and I accept responsibility for paying to SMA
any amounts my insurer determines are my responsibility
after calculating deductibles, co-payments and co-insurance
due under my policy.  I understand I am legally responsible
for sending SMA any money received from my health insurance
company for performance of this laboratory test. I also

allow the release of medical information necessary to
process this claim.

**Patient acknowledgement and authorization:**  I acknowledge I
have provided accurate and true information to the best of
my knowledge.  If I have provided my insurance information
for direct insurance/3rd party billing: I hereby authorize
my insurance benefits to be paid directly to SMA Specialty
Medical Lab (SMA) and authorize SMA to release medical
information concerning my testing, including upon request
my genetic testing results, to my insurer and any business
associate of insurer (TB, TPA, etc.) I authorize SMA to be
my Designated Representative for purposes of appealing any
denial of health benefits. I understand that I am
responsible for any amounts that my insurer determines are
my responsibility after calculating deductibles, co-
payments and co-insurance due under my policy.  **I
understand that I am legally responsible for sending SMA
Specialty Medical Lab any money received from my health
insurance company for performance of this genetic test.**
                (emphasis in original)

Both of the sample forms provided were unsigned by anyone.

        In response, Plaintiff submitted a Declaration from its

Business Operations Manager, Kira Zhivalyuk, to which were

annexed "true and correct copies of the paper representation of

what was submitted electronically to United for Patients 1

through 7" "obtained from its clearinghouse" in which Boxes 12,

13 and 27 materially differed from those attached to the Nguyen

Declaration.  Instead, the forms supplied by Plaintiff read in

pertinent part:

        READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.

        12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE.  I
        authorize the release of any medical or other information
        necessary to process this claim.  I also request payment of
        government benefits either to myself or the party who
        accepts assignment below.

17

SIGNED <u>SIGNATURE ON FILE</u>         DATE<u>                 </u>

13.  INSURED'S OR AUTHORIZED PERSON'S SIGNATURE[.] I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED <u>SIGNATURE ON FILE</u>

27.  ACCEPT ASSIGNMENT? (For govt. claims, see back)

<u> X  </u>   YES                <u>      </u>   NO


The Zhivalyuk Declaration goes on to assert that "[t]he billing software that SMA uses automatically checks off the 'YES' box in box 27," and that "[a] 'YES in this box does not signify that SMA has a valid assignment," but "merely denotes that SMA would accept a valid assignment, if given one."  And, "[t]he notations in boxes 12, 13, and 27 are merely administrative.  They are not valid assignments of benefits. Those notations (including check boxes) did not create a valid assignment, or mean that SMA had one." (Zhivalyuk Declaration, ¶s 14, 15).

There thus appears to be a material question as to whether the patients at issue in fact assigned their United benefits to SMA and in the absence of copies of the actual assignment forms signed by the patients, we cannot find these assignments to have been definitively proven.  See, e.g., <u>Progressive Spine &</u>

18

Orthopaedics, LLC v. Empire Blue Cross Blue Shield, Civ. A. No.
16-01649, 2017 U.S. Dist. LEXIS 26671, *12 2017 WL 751851
(D.N.J. Feb. 27, 2017)(language to effect that all patients
signed contracts assigning direct payment of any medical
insurance benefits held conclusory and failure to set forth
actual language from assignments or include copy of alleged
assignments held insufficient to warrant finding of § 502(a)
preemption).

     However, even if this Court were to accept that the
benefits assignments *were given* to Plaintiff, for complete
preemption to apply there also can be "no other independent
legal duty that is implicated by … Defendant's actions."
Davila, 542 U.S. at 210; Pascack Valley, 388 F.3d at 400.
"[C]ourts have held that a legal duty is 'independent' if it is
not based on an obligation under an ERISA plan, or if it 'would
exist whether or not an ERISA plan existed.'" Tishman, 760 F.3d
at 303 (quoting Marin Gen. Hosp. v. Modesto & Empire Traction
Co., 581 F.3d 941, 950 (9th Cir. 2009)).  "In other words, if the
state law claim is not 'derived from, or conditioned upon' the
terms of an ERISA plan, and 'nobody needs to interpret the plan
to determine whether that duty exists,' then the duty is
independent." Id, (quoting Gardner v. Heartland Indus.
Partners, LP, 715 F.3d 609, 614 (6th Cir. 2013)).  *In accord*,

Stevenson v. Bank of N.Y. Co., Inc., 609 F.3d 56, 62 (2d Cir. 2010).

Upon close scrutiny of the complaint in the instant case, it appears that the Plaintiff's claims do not originate or derive from nor do they require interpretation of the language or terms of any patient's insurance plan.  To be sure, the Complaint avers that "there is no dispute that United's insurance policies provide coverage for the services SMA provided."  (Pl's Compl., ¶27).  Rather, Plaintiff's claims for damages arise out of the alleged misrepresentations and/or misinformation that was contained in United's patient/member database which Plaintiff used to verify that the people whose specimens had been submitted to it for testing had coverage for the out of network services it was being asked to provide.  (Pl's Compl., ¶s 24-25).  In confirming coverage for the patients at issue, at no time did United inform Plaintiff that prior authorization or pre-approval for the tests which SMA was being asked to perform was necessary and, until September 2015, "SMA routinely provided laboratory services ordered by medical professionals for United's members as an out of network provider and received timely and appropriate reimbursement."  (Compl., ¶s 34-39).

It is further averred that to this day, United has never informed SMA that it did not want SMA to perform testing

services for its members nor has it ever informed SMA that it will never pay SMA for the services rendered on behalf of its members. (Compl., ¶s 43-45). In fact, United has not denied Plaintiff's claims for reimbursement, it has instead "pended" or "suspended" them apparently indefinitely, while making more and more allegedly unreasonable demands for additional information. (Compl., ¶s 60-76, 92-93). This naturally leads to the conclusion that coverage is indeed provided under Defendant's plans and that the only question is the *amount* of reimbursement due thereunder, regardless of the fact that the plaintiff's claims are derived from ERISA plans and exist only because of those plans. (See, e.g., Progressive Spine, 2017 U.S. Dist. LEXIS at *18, citing Pascack Valley, 388 F.3d at 402-403, and noting that where "neither coverage nor eligibility [are] in dispute," a plaintiff's "`right to recovery, if it exists, depends entirely on the operation of third-party contracts …that are independent of the Plan itself.'"). See also, CardioNet, 751 F.3d at 178("As we explained in Pascack Valley, a provider may bring a contract action for an insurer's failure to reimburse the provider pursuant to the terms of the agreement while a claim seeking coverage of a service may only be brought under ERISA"), Emergency Physicians of St. Clare's v. United Healthcare, Civ. A. No. 14-404, 2014 U.S. Dist. LEXIS 178042, *13, 2014 WL 7404563 (D. N.J. Dec. 29, 2014) ("claims disputing

reimbursement amounts are not preempted by ERISA," and <u>Atlantic Shore Surgical Associates v. Administrators Public Service Electric & Gas Co.</u>, Civ. A. No. 18-05714, 2018 WL 5832151, 2018 U.S. Dist. LEXIS 190836 at *10-*11 (Nov. 7, 2018)(finding plaintiff's suit not preempted under §502 as it asserted rights arising from the provision of pre-authorized laparoscopic surgery to member/insured).

Moreover, some of the claims were eventually paid, leading Plaintiff to believe that eventually the rest would be too. (Compl., ¶s 59, 77-86).  Through it all, United's members have routinely received the benefits of SMA's services and Defendant itself has "benefited by the fact that its members received the services SMA provided since United is obligated to cover lab tests for its members." (Compl., ¶s 37-38).  These averments are, we find sufficient to state causes of action under Pennsylvania common law for promissory estoppel, implied contract/quantum meruit, negligent misrepresentation and unjust enrichment.  "As pled, then, the plaintiff's claims [have] a legal basis apart from ERISA." <u>East Coast Advanced Plastic Surgery v. Horizon Blue Cross Blue Shield of New Jersey</u>, Civ. A. No. 18-CV-7718, 2018 WL 6178869, 2018 U.S. Dist. LEXIS 199891 at *11, (D. N.J. Nov. 26, 2018).  As a number of courts considering this issue have recognized, a plaintiff is the "master of its complaint" and may choose to plead its claims on the basis of an

implied contract, in lieu of seeking to recover under an assignment of benefits.  See, Marin General Hospital v. Modesto & Empire Traction Co., 581 F.3d 941, 949 (9th Cir. 2009)(explaining that simply because medical provider was assigned patient's benefits and could have brought claim under Section 502(a) did not mean that claim under 502(a) was the only cause of action it could bring); Progressive Spine, 2017 U.S. Dist. LEXIS at *24; North Jersey Brain & Spine Center v. Aetna Life Insurance Co., Civ. A. No. 16-1544, 2017 WL 659012, 2017 U.S. Dist. LEXIS 22710, *9, *11-*12 (D. N.J. Feb. 17, 2017), adopted by, objections overruled and remanded by 2017 U.S. Dist. LEXIS 39769 (D. N.J. Mar. 20, 2017).  Regardless of whether or not SMA could have elected to bring suit against Defendant here pursuant to any assignments which it may or may not have had, the fact remains that it chose not to do so.  Accordingly, inasmuch as Plaintiff's state law claims are predicated on a legal duty which arises independently of ERISA plans, they are not completely preempted under §502(a).  North Jersey Brain & Spine, supra.  We therefore conclude that this case is properly remanded to the state court from which it was removed.

An Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| S.M.A. MEDICAL, INC., d/b/a SMA SPECIALTY MEDICAL LAB,<br>          Plaintiff,<br><br>     v.<br><br>UNITEDHEALTH GROUP, INC., UNITEDHEALTHCARE SERVICES, INC., UNITEDHEALTHCARE SERVICE, LLC, UNITEDHEALTHCARE INSURANCE CO., UNITEDHEALTHCARE OF PENNSYLVANIA, INC., OPTUMINSIGHT, INC., and UMR, INC.,<br>          Defendants. | CIVIL ACTION<br><br><br><br>NO.  19-6038 |

**ORDER**

AND NOW, this    20th        day of April, 2020, upon consideration of the Motion of Plaintiff S.M.A. Medical, Inc. to Remand (Doc. No. 8) and Defendants' Response in opposition thereto, it is hereby ORDERED that the Motion is GRANTED and this action is REMANDED to the Court of Common Pleas of Bucks County, Pennsylvania for the reasons set forth in the preceding Memorandum Opinion.

IT IS FURTHER ORDERED that following remand, the Clerk of Court shall promptly close this case.

BY THE COURT:


s/ J. Curtis Joyner

_____
J. CURTIS JOYNER,          J.